William G. TALBERG, et al., and James E. Novak, Relators,

v.

COMMISSIONER OF ECONOMIC SECURITY, Respondent.

No. C9-85-64.

Court of Appeals of Minnesota.

July 2, 1985.

John G. Engberg, Joseph B. Nierenberg, Minneapolis, for relators.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, St. Paul, for respondent.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

RANDALL, Presiding Judge.

Relators seek review of the decision of the Commissioner of Economic Security finding them ineligible to receive Trade Adjustment Assistance pursuant to the Trade Act of 1974.

We reverse.

## FACTS

Relators are 320 former employees of Reserve Mining Company from its Babbitt and Silver Bay installations. During the fall of 1981, employee vacation times were assigned for the month of July, 1982, when a temporary reduction in operations was scheduled. The company considered employees on vacation to be on work status for purposes of determining eligibility for unemployment benefits and supplemental unemployment benefits.

In March 1982, over 500 employees, including the relators, were laid off. Between March and July, they provided no on-site services. They did accumulate sick leave, were eligible for employee's hospitalization and insurance, and received other work related benefits. Some employees requested and were granted vacation at the time of shutdown. However, most employees' vacation hours remained as scheduled for July.

When the claimants' scheduled vacations arrived, a few months after they last worked for the company, they were paid their vacation pay and treated by the company as being on work status. During their layoff, the claimants were subject to recall by the employer. That status continued until the end of their vacation period when their employment relationship with company was finally severed.

On March 24, 1983, the employees filed petitions for certification for Trade Adjustment Assistance with the United States Department of Labor under the Trade Act

of 1974, 19 U.S.C. § 2271. The Secretary of Labor certified workers who were totally or partially separated from employment on or after the "impact date" of March 24, 1982, eligible to apply for adjustment assistance.

The Commissioner of Economic Security determined that the relators last separated from employment in March, 1982, when they were laid off, rather than when they were finally terminated after receiving their vacation pay. The Commissioner held that the perception of the employer and employee as to the nature of their relationship was irrelevant to determining the date of separation. The Commissioner found that the provision of services as well as payment was required for the existence of an employment relationship. Since the determined separation date occurred prior to the impact date, the Commissioner held the employees not entitled to Trade Adjustment Assistance.

## ISSUE

Does the payment of vacation pay after a period of layoff establish a new separation date for the purposes of determining eligibility for benefits under the Trade Act of 1974, 19 U.S.C. § 2101 et seq.?

## ANALYSIS

Part two of subchapter II of the Trade Act of 1974, 19 U.S.C. § 2271 et seq., provides various benefits to workers whose livelihoods have been impaired due to the importation of competing goods.

■ 19 U.S.C. § 2311 provides for cooperation between the Department of Labor and any state or state agency in order to implement the provisions of the Trade Act. Section 2311(d) provides, "A determination by a cooperating State agency with respect to entitlement to program benefits under an agreement is subject to review in the same manner and to the same extent as determinations under the applicable State law and only in that manner and to that extent." The denial of federal benefits by the Department of Economic Security is,

therefore, appealable to this court as if it had been a denial of conventional unemployment benefits.

■ In economic security cases, this court's scope of review is limited. The findings must be reviewed in the light most favorable to the decision and, if there is evidence reasonably tending to sustain the findings, they will not be disturbed. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). In reviewing the legal conclusion of the Commissioner, however, this court is free to exercise its independent judgment. *Smith v. Employer's Overload Co.*, 314 N.W.2d 220, 222 (Minn.1981); *Helmin v. Griswold Ribbon and Typewriter*, 345 N.W.2d 257 (Minn.Ct. App.1984).

In determining benefits under the Trade Act of 1974, after layoffs are certified by the Secretary of Labor to be related to foreign competition and the displaced employees deemed eligible to apply for benefits, the individual claimant must meet certain criteria set forth in 19 U.S.C. § 2291. The relevant portion of that statute provides for payment of a trade readjustment allowance to a worker if:

(1) Such worker's last total or partial separation before his application under this part, occurred—

(A) on or after the date, as specified in the certification under which he is covered, on which total or partial separation began or threatened to begin in the adversely affected employment, and

\*    \*    \*    \*    \*    \*

19 U.S.C. § 2291(1)(A).

19 U.S.C. 2273(b) provides a similar limitation.

(b) A certification under this section shall not apply to any worker whose last total or partial separation from the firm or appropriate subdivision of the firm before his application under section 2291 of this title occurred—

(1) more than one year before the date of the petition on which such certification was granted,

\*        \*        \*        \*        \*        \*

19 U.S.C. § 2273(b)(1).

In this case, the layoffs occurred more than one year before the date of the petition (March 24, 1983). The parties stipulated that the impact date is March 24, 1982, and that the employees in question were laid off in March of 1982 prior to the 24th. If the layoff is held to be the date of separation, as the Department of Economic Security determined, these claimants are ineligible to receive benefits. If, however, the final separation occurred, as these claimants argue, after the period of vacation time which was within the one-year limitation (summer of 1982 is less than 12 months before March 24, 1983), the claimants are eligible. To determine the date of separation, the court must look first to the definitions supplied by the Act.

In 19 U.S.C. § 2319(6) the term "partial separation" is defined as a reduction of hours of work or wages to 80 percent or less of the weekly average in affected employment and, in 19 U.S.C. § 2319(11), "total separation" is defined as "the layoff or severance of an individual from employment with a firm in which \* \* \* adversely affected employment exists." 29 CFR 91.-3(15) defines employment as "any service performed for an employer by an individual for wages or by an officer of a corporation." The Commissioner of Economic Security argues that, because the employees were not providing services during their period of vacation, they were not employed during that period. In addition, the regulations provide as follows:

> Vacation or holiday pay which is paid in connection with a total separation (including a layoff without a definite date of return to work) shall be disregarded in determining whether an individual has experienced a week of unemployment, whether paid before or after separation.

29 CFR § 91.13(c). Thus, the Commissioner argues, the payment of vacation pay during layoff is disregarded in determining when the claimants were separated.

Regulations promulgated by the Secretary of Labor provide various definitions which help to clarify the meaning of the phrase "last total \* \* \* separation" in the Trade Act. 19 U.S.C. § 2273(b).

> (13) "Date of separation" means, as to a totally separated individual, the date on which the individual was laid off or otherwise totally separated from employment.

\*        \*        \*        \*        \*        \*

> (20) "Last separation" means the total or partial separation from adversely affected employment most recently preceeding an individual's application for trade readjustment allowance as to which it is determined that the individual qualifies under § 91.7.

> (21) "Layoff" means a suspension from pay status for lack of work initiated by an employer and expected to be for a definite or indefinite period of not less than 7 consecutive days.

29 CFR § 91.3(13)(20)(21).

The definition of "last separation" reflects the similar language in 19 U.S.C. § 2273(b). The significant separation date for purposes of determining qualification for trade adjustment assistance is the last separation prior to the date of filing of the petition for benefits which, in this case, was March 24, 1983.

■ Relators argue that, although they were laid off prior to the impact date, the layoff does not mark the date of final separation from employment. We agree. By being returned to active status when put on vacation leave, these employees returned to work. Testimony before the referee indicated that both the employer and employees viewed the vacation time as work status.

The Commissioner, in his decision, states, "if an employee is on layoff due to lack of work he is performing no services for the employer and is receiving no wages and is deemed to be unemployed \* \* \* the situation is not changed merely because the

employees received a previously accrued fringe benefit (vacation pay) * * *." This assertion, which appears to be the crux of the Commissioner's decision, contradicts a portion of Minnesota's unemployment compensation law. Minn.Stat. § 268.04, subd. 23, defines unemployment as a period in which the individual is performing no services and with respect to which he is receiving no wages. However, under subdivision 25, " 'wages' means all remuneration for services * * *." (Emphasis added).

Contrary to the Commissioner's decision, the provision of on-site services is not required to create an employment relationship. 29 CFR § 91.13 defines unemployment and states:

An individual is not unemployed because of lack of work for purposes of § 91.-13(1)(37) in a week for which the individual applies for a trade readjustment allowance if the individual:

(1) Was on leave for vacation or holiday purposes during all or part of such week,

> \*     \*     \*     \*     \*     \*

In this court's recent decision in *Reserve Mining Company v. VanderVeer*, 368 N.W.2d 361 (Minn.Ct.App.1985), we held that, when employees were receiving pay during vacation periods assigned by an employer, even absent a collective bargaining agreement allowing the employer to set vacations, the employees had enough employer-employee relationship with pay so as to be properly denied unemployment compensation under Minn.Stat. § 268.08. The result of that decision was to prevent double payment to employees receiving vacation benefits.

That holding is consistent with our decision here. In this case there is, in addition, the collective bargaining agreement authorizing the employer to assign vacation periods to coincide with projected layoffs. Thus, the employees here maintained an even stronger employer-employee relationship while laid off, but subject to recall and their prospective scheduled vacations.

The United States Supreme Court, in *Social Security Board v. Nierotko*, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718 (1946), decided that a National Labor Relations Board award of back pay not only constituted wages but it also signified the existence of an employment relationship. 327 U.S. at 365, 66 S.Ct. at 641. The court construed a provision of the Social Security Act which was very similar to the material provisions of the Trade Act regulations. The court stated:

We think that "service" as used by Congress in this definite phrase means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer.

*Id.* at 365–66, 66 S.Ct. at 641.

*Nierotko* has been expressly applied to the question of what constitutes "employment" under the Trade Act. In *International Union, U.A.W. v. Donovan*, 568 F.Supp. 1047 (D.D.C.1983), the court addressed the issue of whether the receipt of non-regular wages "such as workers' compensation, disability pay, sickness or accident pay, holiday pay, vacation pay, military pay, backpay or fringe benefits," constitutes "employment" for the purpose of determining the requisite number of qualifying weeks. *Id.* at 1049. The federal court ruled that the receipt of such compensation did constitute employment. *Id.* at 1052–56.

█ We hold that when employees work for an employer, and are not fired, discharged or terminated but are told that due to a slow down in work they will not be required to report to the job site but are to stay on call and to report for purposes of receiving their vacation pay at a later date, there is an employer-employee relationship. The claimants herein, as those in *Donovan*, received periodic payment for vacation leave.

### DECISION

An individual's receipt of employer-authorized leave benefits is indicative of an employment relationship. The relators did

not finally separate from employment until their authorized periods of vacation leave had expired.

The decision of the Commissioner of Economic Security is, therefore, reversed.

Reversed.