**ROBERTSON, Appellant,**

**v.**

**OHIO BUREAU OF EMPLOYMENT SERVICES, Appellee.**

[Cite as *Robertson v. Ohio Bur. of Emp. Serv.* (1991), 76 Ohio App.3d 729.]

Court of Appeals of Ohio,
Hamilton County.

No. C–900711.

Decided Dec. 4, 1991.

*R. Gregory Park,* for appellant.

*Lee Fisher,* Attorney General, and *David E. Lefton,* Assistant Attorney General, for appellee.

---

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, the assignments of error, the briefs and the arguments of counsel. We have *sua sponte* removed this case from the accelerated calendar.

The plaintiff-appellant, Dewey R. Robertson, appeals from the judgment of the court of common pleas affirming the decision of the Ohio Unemployment Compensation Board of Review ("board") to deny him trade readjustment allowances ("TRAs") under the Trade Act of 1974. He asserts that the board erred in finding that his termination from General Motors ("GM") was not due to lack of work, and that the board was collaterally estopped from so finding

based upon an earlier determination regarding his eligibility for state unemployment benefits. Because the board failed to make findings essential to the integrity of its decision, we reverse.

## I

In his application for unemployment benefits filed on November 2, 1987, Robertson stated that the reason for his separation from GM was the closing of its Norwood plant, where he had worked for over twenty years. In a statement prepared on November 16, 1987, he indicated that he had neither quit nor been discharged, but, rather, "took a buy-out * * * due to a plant closing."

On November 17, 1987, the Ohio Bureau of Employment Services ("administrator") issued a determination in which Robertson was found to have "quit GMC" without just cause. Robertson was nonetheless found entitled to unemployment benefits under R.C. 4141.29(D)(2)(a)(ii), which provides for the payment of benefits when separation is "pursuant to * * * an established employer plan, program, or policy, which permits the employee, *because of lack of work,* to accept a separation from employment." (Emphasis supplied.)

GM subsequently requested reconsideration by the administrator, arguing that Robertson's participation in the buy-out program was not related to the closing of its Norwood plant. According to GM, Robertson would have been able to remain its employee if he had not opted for the buy-out. The first line of the buy-out agreement, which is part of the record, reads: "Management has discussed with me the option of continuing my employment with General Motors or being released by a special incentive separation under the General Motors Corporate Wide Special Separation Program." This document is signed by Robertson.

The administrator denied GM's request for reconsideration without explanation. GM did not appeal.

On May 11, 1988, Robertson subsequently applied for TRAs under the Trade Act of 1974. In his application Robertson gave his reason for separation as a "buy-out" instead of lack of work. On May 12, 1988, the administrator determined that Robertson was not eligible for TRAs because his separation was not due to a lack of work.

After unsuccessfully requesting reconsideration, Robertson appealed to the board. The referee conducted a hearing over the telephone, with Robertson being the only party to give testimony. Robertson asserted that he was told "several times" by GM that if he did not accept the buy-out he would be laid off on November 1, 1987, due to a lack of work at the Norwood plant. The

board, however, denied his appeal on December 22, 1989. The referee made the following findings pertinent here:

"The facts of this case indicate that a decision has been made by the Administrator * * *, by the Reconsideration Decision dated December 16, 1987, that the claimant quit his employment with General Motors Corporation. That decision, ruling upon claimant's separation from employment with General Motors Corporation, has become final. The Trade Act of 1974, as amended and set forth above, clearly indicates that inclusion within the definition of adversely affected worker requires a separation because of a lack of work. The decision, previously issued, a decision which has become final, clearly held that claimant became separated for reasons other than lack of work. As claimant does not fall within the definition of an adversely affected worker, it must be held that the Administrator * * * has properly determined that he is not entitled to [TRAs]."

Robertson requested further review by the board, asserting that the referee's rationale both ignored his hearing testimony and selectively quoted from the administrator's decision granting him unemployment benefits, citing the administrator's finding that he had quit his job at GM while ignoring the finding that his separation had been due to a lack of work. The board disallowed his application to institute further appeal without explanation.

Robertson then filed an appeal from the board's decision with the court of common pleas. The court of common pleas denied the appeal, concluding without explanation that the decision of the board was "not unlawful, unreasonable or against the manifest weight of the evidence."

## II

In his sole assignment of error, Robertson challenges the board's decision denying him TRAs on two grounds. First, he asserts that the denial was contrary to the weight of the evidence. Second, he argues that the administrator cannot properly find him entitled to state unemployment benefits because his separation was pursuant to an employer plan "which permits the employee, because of lack of work, to accept a separation from employment," see R.C. 4141.29(D)(2)(a)(ii), and then later deny him TRAs because his separation was not due to a lack of work.

The administrator, in his appellate brief, acknowledges that "there was a general lack of work at GM's Norwood Division," and proffers this as the reason that the administrator granted regular state unemployment benefits. However, the administrator contends TRAs are only available to "adversely affected" workers under Sections 2319(1) and (2), Title 19, U.S.Code, and an "adversely affected" worker is one who has become separated from employ-

ment because of a "lack of work," meaning an individual lack of work. According to the administrator, its two decisions are reconcilable because they rely on two different standards for two different statutory schemes: a lack of general work for state unemployment benefits versus a lack of individual work for TRAs.

■ The administrator correctly asserts that the phrase "lack of work" in R.C. 4141.29(D)(2)(a)(ii) refers to a lack of general work, *i.e.*, a lack of work in the employer's overall work force, and not a lack of work for the particular claimant. See *Ford Motor Co. v. Ohio Bur. of Emp. Serv.* (1991), 59 Ohio St.3d 188, 571 N.E.2d 727.

We have found no cases, and none have been cited to us, in which a court has decided whether an individual lack of work is required for the purposes of awarding TRAs under the federal statute, as the administrator contends. The eligibility requirements for TRAs are set forth within the Trade Act of 1974, Sections 2319(1) and (2)(A), Title 19, U.S.Code, which define an "adversely affected worker" as an "individual who, because of lack of work in adversely affected employment * * * has been totally or partially separated from such employment." "Total [s]eparation" is defined by the Act as "the layoff or severance of an individual from employment * * *." Section 2319(11), Title 19, U.S.Code. The regulations define "[l]ayoff" as "a suspension of or separation from employment by a firm for lack of work, initiated by the employer, and expected to be for definite or indefinite period * * *." Section 617.3(z), Title 20, C.F.R. The regulations do not define "severance."

We are confronted, therefore, by an absence of authority on the particular issue whether, in order to be eligible for TRAs, a claimant must demonstrate that there was a lack of work particular to him which caused his separation, or whether a showing of a general lack of work will suffice as it does for the purpose of R.C. 4141.29(D)(2)(a)(ii). It is noted that R.C. 4141.29(D)(2)(a)(ii) was enacted to create an exception to the "voluntary quit" rule which is part of the state unemployment compensation scheme, and was, as the Ohio Supreme Court observed in *Ford,* apparently part of a state legislative attempt to reform the state laws to give protection to those workers who have acquired equities in their employment through their length of service, while recognizing that employers often have to reduce their work force to maintain efficiency. See *Ford, supra,* 59 Ohio St.3d at 189–190, 571 N.E.2d at 729. TRAs, on the other hand, are part of a separate federal legislative effort to "assist individuals, who became unemployed as a result of increased imports [to] return to suitable employment." Section 617.2, Title 20, C.F.R.

■ We perceive no reason, in light of the different statutory purposes, why the definition of the phrase "lack of work" in R.C. 4141.29(D)(2)(a)(ii), as

it has been interpreted by the Ohio Supreme Court in *Ford*, should control the definition of the same phrase as it appears in the Trade Act of 1974. Indeed, given the rather distinct purpose of R.C. 4141.29(D)(2)(a)(ii) to make an exception to the "voluntary quit" rule, we deem it more likely that the state statute's use of the term "lack of work" to mean a general reduction in the work force is unique to that statutory section. On the other hand, and in view of the purpose of the Trade Act of 1974 to provide assistance to those involuntarily displaced from their jobs by imports, it seems likely that TRAs were intended only for those who were terminated because of an individual lack of work. Thus, in the absence of any case law to the contrary, we accept for purposes of this decision the administrator's interpretation of the phrase "lack of work" as it appears in the Trade Act of 1974, upon the well-established principle that courts, when interpreting statutes, must give due deference to the interpretation formulated by the agency charged with the statute's administration unless it is contrary to clear legislative intent. See *East Miami v. Ohio Bur. of Emp. Serv.* (Apr. 13, 1990), Huron App. No. H–89–16, unreported.

Assuming, therefore, that the phrase "lack of work" in the Trade Act of 1974 refers to a lack of individual work, we accept the administrator's position that it is possible to have found Robertson eligible for unemployment benefits under R.C. 4141.29(D)(2)(a)(ii), based upon a finding that there was a general lack of work at the Norwood plant, and yet to have denied him TRAs because he failed to prove that the lack of work was particular to him. The difficulty with the administrator's position, however, is that the board did not determine that Robertson was ineligible for TRAs because the evidence failed to prove a lack of individual work. Indeed, in the administrator's brief before the court of common pleas, the administrator admitted as much: "Moreover, neither the administrator nor the Board ever made a finding that there was an individual lack of work for the Claimant at the time he voluntarily quit his employment."

■ What the board did, in fact, was give preclusive effect to the administrator's earlier determination which, by the administrator's own admission, was based on a finding of a general lack of work. Obviously, the administrator's earlier decision could only be considered dispositive on the issue of an individual lack of work if contained in that decision was some express or implicit determination that Robertson would have had a job if he had not accepted the buy-out. The latter proposition was, in fact, argued by GM in its motion for reconsideration, but the motion was denied by the administrator

without any express finding.[1]  Hence, we can only assume, on this record, that there was no basis upon which the administrator's earlier determination could be considered dispositive on the issue of whether Robertson quit because of a lack of work particular to him.

We conclude, therefore, that the board's denial of TRAs was unreasonable and unlawful because it improperly applied the doctrine of collateral estoppel, resulting in the application of an incorrect legal standard, and because the board failed to make findings essential to the issue of whether Robertson's separation was due to an individual lack of work.  Because there is conflicting evidence regarding the issue of an individual lack of work, we cannot determine this issue as a matter of law.

In *Superior Metal Prod., Inc. v. Ohio Bur. of Emp. Serv.* (1975), 41 Ohio St.2d 143, 70 O.O.2d 263, 324 N.E.2d 179, the Ohio Supreme Court held that under R.C. 4141.28(O) the court of common pleas has the power to remand a cause to the board, and that a court of appeals has commensurate authority under App.R. 12(B).  In order that the docket of the court of common pleas may accurately reflect these proceedings, the judgment of the court of common pleas is reversed and this matter is remanded to the court of common pleas with instructions to remand the matter to the board.  On remand, the board should expressly weigh the evidence and determine whether Robertson was separated from employment due to an individual lack of work.

*Judgment accordingly.*

GORMAN, P.J., SHANNON and UTZ, JJ., concur.

---

1. The administrator's denial of GM's motion for reconsideration does not necessarily support the inference that it rejected GM's evidence or that Robertson could have continued his employment.  Conceivably the administrator could have accepted GM's argument that work remained for Robertson and still have found that his separation was part of a general reduction of the work force.  Our understanding of the administrator's action is hindered by the absence of any explanation in his decision.