**Brian P. SINYKIN, Relator,**

v.

**COMMISSIONER OF ECONOMIC SECURITY, Respondent.**

No. C2–98–2254.

Court of Appeals of Minnesota.

May 25, 1999.

---

Brian P. Sinykin, Richfield, pro se relator.

Kent E. Todd, Department of Economic Security, St. Paul, for respondent Commissioner.

Considered and decided by SCHUMACHER, Presiding Judge, AMUNDSON, Judge, and HUSPENI, Judge.

## OPINION

HUSPENI, Judge.*

Relator Brian Sinykin appeals the Department of Economic Security's determination that he was not eligible for a trade readjustment allowance pursuant to the Trade Act of 1974, 19 U.S.C. §§ 2101–2495 (1994), because he was not separated from employment due to a lack of work. We affirm.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## FACTS

Relator Brian Sinykin was employed by Nordic Track from October 19, 1996, until April 10, 1998. His last position with Nordic Track was as a telephone sales representative. He worked 32 hours a week at a base pay of $11.38 per hour with an additional $1.00 per hour for working the late shift. He also had the opportunity for incentives.

On April 10, 1998, Nordic Track closed its telemarketing sales department and offered Sinykin continued employment as a customer service representative beginning on April 13, 1998. This position paid $11.36 per hour but did not provide the opportunity for incentives or late shift pay. Nordic Track offered to train Sinykin for his continued employment as a customer service representative, but Sinykin declined that position and became unemployed.

Nordic Track was certified under the Trade Act of 1974 as adversely affected by imports of exercise equipment. The impact dates were from August 22, 1995 through September 11, 1998. Under the Act, workers whose employers have been adversely affected by foreign imports may be eligible for a trade readjustment allowance (TRA). 19 U.S.C. § 2291. TRA benefits are administered through the states' unemployment compensation departments. 19 U.S.C. § 2311.

Sinykin applied for TRA benefits with the Minnesota Department of Economic Security. The department held Sinykin was not entitled to TRA benefits because he was separated from work with Nordic Track for reasons other than lack of work. Sinykin appealed from the determination. A reemployment insurance judge conducted a hearing on Sinykin's entitlement to TRA benefits and reversed the department's determination. The commissioner's

Minn. Const. art. VI, § 10.

representative ordered a review of the reemployment insurance judge's decision pursuant to Minn.Stat. § 268.105, subd. 3 (1998).

The commissioner's representative conducted review proceedings on Sinykin's entitlement to TRA benefits and reversed the reemployment insurance judge's decision. The commissioner's representative held Sinykin was not entitled to TRA benefits because he was separated from employment for reasons other than lack of work, and whether there was a lack of "equivalent" work was not determinative.

Sinykin subsequently filed a petition for a writ of certiorari to this court.

## ISSUE

Did the commissioner's representative erroneously determine Sinykin was not eligible for assistance under the Trade Act of 1974 for lack of work when Sinykin's position as a sales representative was eliminated, but he was offered employment as a customer service representative with the same base pay?

## ANALYSIS

■■■■ . A state agency's determination regarding entitlement to TRA benefits is "subject to review in the same manner and to the same extent as determinations under the applicable State law * * * ." 19 U.S.C. § 2311(d) (1994). In economic security cases, our standard of review is limited. *Talberg v. Commissioner of Econ. Sec.*, 370 N.W.2d 686, 688 (Minn. App.1985). We view the factual findings in the light most favorable to the commissioner's determination, and only consider whether the record contains evidence sufficient to sustain that determination. *White v. Metropolitan Med. Ctr.*, 332 N.W.2d 25, 26 (Minn.1983). In reviewing the legal conclusions, however, we may exercise our independent judgment. *Talberg*, 370 N.W.2d at 688.

■ In the present case, the commissioner's representative's determination of whether there was a "lack of work" under the Trade Act of 1974, 19 U.S.C. § 2101–2495 (1994), was not a factual determination; the essential facts were not in dispute. Instead, it was an interpretation of whether the term "lack of work" encompassed the facts of this case. The commissioner's representative's decision is, therefore, fully reviewable by this court. *Lolling v. Midwest Patrol*, 545 N.W.2d 372, 375 (Minn.1996) (holding the construction of a statute is a question of law fully reviewable by an appellate court).

■ The purpose of the Trade Act of 1974 is to assist workers adversely affected by foreign competition in returning to suitable employment. 20 C.F.R. § 617.2 (1998). Because the purpose is remedial, "the Act's eligibility provisions must be liberally construed." *Embaby v. Department of Jobs and Training*, 397 N.W.2d 609, 611 (Minn.App.1986).

■ The Act provides for payment of a trade readjustment allowance to adversely affected workers. 19 U.S.C. § 2291(a). It defines the phrase "adversely affected worker" as:

> an individual who, because of lack of work in adversely affected employment—
>
> > (A) has been totally or partially separated from such employment, or
> >
> > (B) has been totally separated from employment with the firm in a subdivision of which such adversely affected employment exists.

19 U.S.C. § 2319(2). Thus, to be entitled to assistance under the Act, a worker must be separated for lack of work.

Sinykin challenges the commissioner's representative's determination that he was not separated for a lack of work. In his brief on appeal, Sinykin argues that the state eligibility standards for reemployment insurance apply, and because he is receiving reemployment insurance, he should also qualify for TRA benefits. Sinykin also cites 19 U.S.C. § 2296(e) for the

proposition that he is eligible for TRA benefits if he is separated from employment and no "suitable employment" is available.

■ Sinykin correctly asserts that the state provisions governing availability and disqualification for reemployment insurance apply to applicants for TRA benefits. The Act provides:

Except where inconsistent with the provisions of this part and subject to such regulations as the Secretary may prescribe, the availability and disqualification provisions of the State law

(1) under which an adversely affected worker is entitled to unemployment insurance * * *, or

(2) if he is not so entitled to unemployment insurance, of the State in which he was totally or partially separated

shall apply to any such worker who files a claim for trade readjustment allowances.

19 U.S.C. § 2294.

Apparently, Sinykin has met the state standards for receiving reemployment benefits. In his submissions to the commissioner, Sinykin indicated he has been receiving reemployment benefits since April 1998. Thus, we may assume that either the Commissioner of Economic Security determined Sinykin met the requirements of Minn.Stat. § 268.095, subd. 1(1) (1998), and quit for "good reason caused by the employer," or that Nordic Track did not challenge Sinykin's application for reemployment benefits. Under either scenario, the circumstances surrounding his decision to quit appear to meet the requirements of Minn.Stat. § 268.095, subd. 1(1). *See Marty v. Digital Equip. Corp.*, 345 N.W.2d 773, 775 (Minn.1984) (unemployment compensation claimant did not voluntarily resign by refusing to accept new position offered by company, when new position had a lower potential maximum salary, was two grades lower than former position, and chances of advancement were more limited, even though her pay in the new posi-

tion would initially have been the same as before the transfer); *Holbrook v. Minnesota Museum of Art*, 405 N.W.2d 537, 539 (Minn.App.1987) (reassignment of assistant curator to a substantially different job involving clerical duties was good cause even though employee had originally done primarily clerical work before being promoted to assistant curator), *review denied* (Minn. July 15, 1987).

■ While Sinykin may qualify for reemployment benefits, he does not necessarily qualify for TRA benefits, however. Although the federal statute and regulations provide that the disqualifying provisions of state unemployment insurance law apply to claims for TRA benefits, TRA claimants must also meet the additional qualifying requirements set forth in the federal statute and regulations. *Mosqueda v. Unemployment Comp. Bd. of Rev.*, 60 Pa.Cmwlth. 242, 431 A.2d 371, 373 (1981); *see* 19 U.S.C. § 2294 (stating disqualification provisions of state unemployment insurance apply to TRA applicants except where inconsistent with the federal statute and regulations).

To qualify for TRA benefits Sinykin must have quit for "good reason caused by the employer" *and* must have been separated from employment because of a "lack of work in adversely affected employment." Sinykin argues he meets the requirements for TRA benefits because the federal statute does not require him to accept employment unless it is "suitable employment" as defined by 19 U.S.C. § 2296(e). The regulation interpreting this section states:

**Approval of training.**

(i) * * * For the purposes of paragraph (a)(1) of this section only, the term "suitable employment" means, with respect to a worker, work of a substantially equal or higher skill level than the worker's past adversely affected employment, and wages for such work at not less that [sic] 80 percent of the worker's average weekly wage.

Sinykin has misread the statute and regulation. Section 2296(e) is not applicable to the issue of whether there is a lack of work. It establishes the qualifications for workers who are already eligible for TRA benefits to receive reemployment services training. The statute specifically indicates the definition of suitable employment applies only to section 2296 regarding approval of training.

■ Thus, the issue to be resolved is whether Sinykin was "separated" for a "lack of work" when there was a "lack of work" in Sinykin's field (sales), but not a total absence of work at Nordic Track. This is a question of first impression in Minnesota. Because the Act does not define "lack of work" and there are no Minnesota cases on point, we look for guidance from other courts that have considered similar issues.

In *Mosqueda*, a welder's apprentice was given the option of accepting a layoff or an assignment under an apprentice retention program. *Id.* at 372. Employees participating in the retention program remained employed but forfeited their seniority and received less net pay than a laid-off worker would receive from unemployment compensation. *Id.* The employee opted for the traditional layoff and received unemployment benefits. *Id.* at 372–73. He also applied for TRA benefits, but his request was denied. *Id.* at 373. In upholding the denial on appeal, the court stated that because the employee had the option of continuing his employment via the apprentice program, he became unemployed by his own choice and was not an "adversely affected worker." *Id.*

Similarly, in *Robertson v. Ohio Bureau of Employment Servs*, 76 Ohio App.3d 729, 603 N.E.2d 334 (1991), an employee in the automotive industry who took a buyout because of the closing of the plant where he was employed received unemployment benefits because of a lack of work, but was denied TRA benefits. *Id.* at 335–36. The Ohio Court of Appeals upheld the denial of benefits, observing that the phrase "lack of work" as used in the unemployment compensation statute refers to lack of general work in the employer's overall work force and not a lack of work for the particular claimant, but the phrase used in the TRA provisions refers to an individual lack of work for the claimant. *Id.* at 337.

■ Considering Sinykin's claim in light of these cases, we conclude, as did the commissioner's representative, that Sinykin does not qualify for TRA benefits. To qualify for TRA benefits, it is not enough for Sinykin to have left employment for good reason caused by his employer; he must be "separated" from his employment because of a lack of work. Separation is defined by the Act as "the layoff or severance of an individual from employment." 19 U.S.C. § 2319(11). Although it is undisputed that Sinykin's position in customer service was eliminated, he was not actually laid off. His name did not appear on NordicTrack's list of laid-off employees. Rather, he chose to resign because he did not want to accept another position within the company.

■ Additionally, there is no requirement in the federal statute that the available work must be comparable to the employee's prior position. It simply states there must be a "lack of work." [1] In the present case, there was work available for Sinykin in the customer service department. Like the employee in *Mosqueda*, Sinykin chose not to accept the option of continued employment. Accordingly, we conclude the evidence in the record is sufficient to sustain the commissioner's deter-

---

1. We recognize the potential inequity of requiring petitioners for TRA benefits to take any available work rather than available work that is comparable to their previous positions. There is, however, no provision requiring a lack of comparable work in either the Act or the regulations implementing the Act. Moreover, that issue is not presented in this case; the work offered to Sinykin was relatively similar to his previous job and at the same base-pay rate.

mination that Sinykin was not separated from his employment because of a lack of work.

## DECISION

The commissioner's representative properly determined Sinykin was not eligible for assistance under the Trade Act of 1974 for lack of work when Sinykin's position as a sales representative was eliminated, but he was offered employment as a customer service representative with the same base pay.

**Affirmed.**