Scott M. NELSON, Relator,

v.

COMMISSIONER OF EMPLOYMENT
AND ECONOMIC DEVELOPMENT,
Respondent.

No. A04–1930.

Court of Appeals of Minnesota.

June 28, 2005.

Bruce P. Grostephan, Ronald G. Marks, Peterson, Engberg & Peterson, Minneapolis, MN, for relator.

Lee B. Nelson, Linda A. Holmes, Department of Employment and Economic Development, St. Paul, MN, for respondent.

.Considered and decided by RANDALL, Presiding Judge; KALITOWSKI, Judge; and HUSPENI, Judge.

## OPINION

HUSPENI, Judge.*

Relator brings a certiorari appeal of the decision of a senior unemployment review judge of the Minnesota Department of Employment and Economic Development declining to review, and adopting, the decision of the unemployment law judge that relator did not qualify for trade readjustment allowance benefits under the Trade Assistance Act of 2002, 19 U.S.C. § 2291. Because the weeks relator was locked out from employment by his employer cannot count toward the required number of work weeks before the qualifying separation date, we affirm.

## FACTS

Relator Scott M. Nelson began working for ME International, Inc. (MEI), a steel foundry, in 1988. Relator was a member of United Steelworkers of America, Local 1028, and participated in a strike that the

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

union initiated against MEI on August 25, 1999, alleging unfair labor practices. MEI and the union reached a settlement agreement on February 23, 2000. The union then made an unconditional offer to immediately return to work on February 25, 2000. MEI denied the offer and locked out the workers. On August 7, 2000, MEI recalled only the 70 most senior workers to return to work and laid off the others. Because relator was 72nd on the seniority list, he was among those who were laid off. More than two years later, on August 26, 2002, MEI recalled relator to work. He worked for just over a week and then quit on September 5, 2002, to return to school.

On June 25, 2003, the U.S. Department of Labor certified MEI as an eligible employer for benefits under the Trade Assistance Act of 2002, 19 U.S.C. § 2291. The Act provides payment of a trade readjustment allowance (TRA), administered through state unemployment compensation departments, to help workers adversely affected by lack of work due to import competition. Because the impact dates were from April 9, 2000, through June 25, 2005, only workers who separated from employment on or after April 9, 2000, were eligible for TRA benefits.

Relator applied for TRA benefits on October 2, 2003. The application was denied because relator was on strike from August 25, 1999, through February 23, 2000 (26 weeks), was locked out from February 25, 2000, until August 7, 2000 (22 weeks), and was laid off on August 7, 2000. Therefore, his only post-April 9, 2000 separation from employment due to lack of work occurred on August 7, 2000, and he did not meet the requirement under the Act that he have 26 weeks of employment at $30 or more per week in the 52–week period prior to the date of separation. Relator appealed and, after a hearing, an unemployment law judge (ULJ) affirmed the denial stating:

The Minnesota Department of Employment and Economic Development has no legal authority to alter the impact date as certified by the U.S. Department of Labor. [Relator] contends that, "the layoff of the adversely affected workers should be deemed to extend into the date specified in the certification under which the worker is covered." However, the qualifying separation date is a specific date, not a flexible period that can be "deemed to extend" into a later period of time. The fact that the Trade Act is a remedial statute does not provide authority for disregarding a specific finding of the U.S. Department of Labor.

While August 7, 2000 is after the impact date of April 9, 2000, [relator] does not qualify using that date as the date of separation because he does not have the necessary earnings in the 52 weeks before August 7, 2000.

Relator again appealed, and a senior unemployment review judge (SURJ) declined further review and adopted the ULJ's decision. Relator filed a writ of certiorari.

## ISSUE

Did the senior unemployment review judge err in adopting the decision of the unemployment law judge that weeks relator spent locked out from employment do not count toward the 26 weeks of employment before a qualifying separation date required to receive TRA benefits?

## ANALYSIS

 A state agency's decision regarding an applicant's entitlement to TRA benefits is "subject to review in the same manner and to the same extent as determinations under the applicable State law and only in that manner and to that extent." 19 U.S.C. § 2311(d) (1999). Under prior

law, the commissioner's representative conducted a de novo review of the ULJ's decision. *See* Minn.Stat. § 268.105, subd. 2(a)-(c) (2002). But the law was amended to provide that a senior unemployment review judge (SURJ) conducts the review. *Id.,* subd. 2(a)-(c) (2004). Further, if the SURJ determines that the facts are not in dispute, he or she may decline to conduct a de novo review and instead may issue an order adopting the ULJ's findings and decision. *Id.,* subd. 2a(a). In this case, the SURJ adopted the ULJ's findings and decision. This court will review the findings adopted by the SURJ to determine if the record contains sufficient evidence to sustain the determination. *Sinykin v. Comm'r of Econ. Sec.,* 594 N.W.2d 227, 230 (Minn.App.1999). This court exercises its independent judgment regarding the legal conclusions. *Id.*

Moreover, statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998). "When interpreting a statute, [this court] first look[s] to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000). The object of statutory interpretation is to ascertain and effectuate legislative intent. Minn.Stat. § 645.16 (2004). But "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.*

█ Relator contends that MEI's lockout should not preclude him from receiving TRA benefits. Under the Trade Act of 2002, 19 U.S.C. § 2291, eligible workers receive benefits if they have lost their jobs due to import competition. The applicable eligibility requirements provide:

(a) Trade readjustment allowance conditions

Payment of a trade readjustment allowance shall be made to an adversely affected worker covered by a certification under subpart A of this part who files an application for such allowance for any week of unemployment which begins more than 60 days after the date on which the petition that resulted in such certification was filed under section 2271 of this title, if the following conditions are met:

. . . .

(2) *Such worker had, in the 52–week period ending with the week in which such total or partial separation occurred, at least 26 weeks of employment at wages of $30 or more a week* in adversely affected employment with a single firm or subdivision of a firm, or, if data with respect to weeks of employment with a firm are not available, equivalent amounts of employment computed under regulations prescribed by the Secretary. For the purposes of this paragraph, any week in which such worker—

(A) is on employer-authorized leave for purposes of vacation, sickness, injury, maternity, or inactive duty or active duty military service for training,

(B) does not work because of a disability that is compensable under a workmen's compensation law or plan of a State or the United States,

(C) had his employment interrupted in order to serve as a full-time representative of a labor organization in such firm or subdivision, or

(D) is on call-up for purposes of active duty in a reserve status in the

Armed Forces of the United States, provided such active duty is "Federal service" as defined in section 8521(a)(1) of Title 5, and

shall be treated as a week of employment at wages of $30 or more, but not more than 7 weeks, in case of weeks described in subparagraph (A) or (C), or both (and not more than 26 weeks, in the case of weeks described in subparagraph (B) or (D)), may be treated as weeks of employment under this sentence.

19 U.S.C. § 2291(a)(1), (2) (emphasis added). Thus, to qualify for benefits under the section, an applicant must have worked during at least 26 weeks, earning at least $30 per week, during the 52–week period before the applicable separation date or meet one of the four listed exceptions.

 The unemployment law judge reasoned that because the beginning impact date determined by the U.S. Department of Labor was April 9, 2000, only workers who separated from employment after that date could qualify for TRA benefits. Because relator had been participating in his union's strike that began on August 25, 1999, and because MEI locked out the employees when they offered to return to work after a settlement on February 25, 2000, relator did not have 26 weeks of work during the prior 52–week period and was thus deemed ineligible for TRA benefits. Thus, relator's only possible qualifying separation date was August 7, 2000, the date when the 70 most senior employees were recalled to work by MEI and relator, as the 72nd most senior employee, was not among them.[1]

Relator argues, however, that because he and the union offered to return to work on February 25, 2000, and because the employer rejected the offer and locked out the employees, the weeks of the lockout should apply toward the statutory requirement to make him eligible for TRA benefits. To decide otherwise, argues relator, would be tantamount to denying TRA benefits to him despite his good-faith efforts to return to work and his inability to do so because of actions of his employer. Unquestionably, there is reasonableness in relator's position. He recognizes, however, that while the Act specifies several instances wherein an employee may be absent from work but still be considered to have been in "employment," a lockout situation caused by the employer is not one of those instances.

Relator also argues that Congress's intent was to help workers harmed by import competition, that such intent must certainly include workers who were locked out due to import competition and that "the lockout should not be used to defeat the intent of Congress." Again, relator's position is reasonable, but the language of the Act must control.

 Relator correctly asserts that the Act's purpose is to assist workers who have been adversely affected by import competition return to suitable employment. See Sinykin, 594 N.W.2d at 230. And because the statute's purpose is remedial, its eligibility provisions should be liberally construed. Id. Moreover, we agree with respondent commissioner's observation that the equities of this case favor relator. Nonetheless, these considerations do not change the fact that the statute's language

1. The only other date after which relator was separated from employment with MEI was September 5, 2002, when relator quit employment with MEI to attend school. This date was not due to a work shortage and cannot be used for TRA purposes. Further, the August 25, 1999 strike date and the February 25, 2000 offer-to-return-to-work date could not be used because they preceded April 9, 2000.

is clear and free from ambiguity. The statute clearly lists only four exceptions to the 26 weeks of work requirement: (1) employer-authorized leave; (2) disability; (3) service as a full-time representative of a labor organization; or (4) call-up to active-duty service from reserved status for the Armed Forces of the United States. 19 U.S.C. § 2291(a)(2)(A)-(D). A lockout from employment is not among them.

We note further the textual canon *expressio unius est exclusio alterius* instructs that to "include one thing implies the exclusion of the other." *Black's Law Dictionary* 620 (8th ed.2004). Thus, Congress's failure to include lockouts in the list of exceptions to the work-duration requirement implies that it should not be included. *See Klein Bancorp., Inc. v. C.I.R.*, 581 N.W.2d 863, 867 (Minn.App. 1998) (legislature would have adopted statutory language to include what it intended to embrace), *review denied* (Minn. Sept. 22, 1998).

Caselaw from foreign jurisdictions, while not binding, informs our decision here. In *Gratta v. Commonwealth Unemployment Comp. Bd. of Review*, 123 Pa.Cmwlth. 642, 555 A.2d 270 (1989), the court concluded that because the Trade Assistance Act does not include an exception for locked-out employees, Congress did not intend to make that exception. Further, the *Gratta* court noted that Congress had amended section 2291 three times since its adoption in 1974, yet never added an exception for locked-out workers. *Gratta*, 555 A.2d at 272. The *Gratta* court also urged Congress to remedy the lack of an exception for locked-out workers in the TRA benefits provision. *See Gratta*, 555 A.2d at 273 ("Until the Congress chooses to amend this section, this court must reluctantly follow the statute."). But in the intervening 16 years since the *Gratta* decision, Congress has added two amendments to the Act—one in 1992 and one in 2002—but has not included a provision protecting locked-out workers. Therefore, although we share the concern expressed by the *Gratta* court and join in its urging that an exception be added that would enable relator and those similarly situated to qualify for benefits under the Act, we also are bound to apply the statutory provisions as written.

■ Finally, relator argues that 19 U.S.C. § 2311(d) gives this court license to look to the protections of state law for locked-out workers. Section 2311(d) states that "[a] determination by a cooperating State agency with respect to entitlement to program benefits under an agreement is subject to review in the same manner and to the same extent as determinations under the applicable State law and only in that manner and to that extent." Relator interprets this provision to mean that this court should not deny him unemployment benefits because Minnesota state law protects workers from disqualification from unemployment benefits if they are locked out. *See* Minn.Stat. § 268.085, subd. 13b(c)(2) (2004) (applicant shall not be disqualified from unemployment benefits if "applicant stops working because of a lockout").

We conclude that relator misconstrues section 2311(d). That section is not applicable to state substantive law; it applies only to state procedural law. *See Embaby v. Dep't of Jobs & Training*, 397 N.W.2d 609, 611 n. 2 (Minn.App.1986) ("A determination regarding entitlement to trade adjustment assistance ... is subject to the same review *procedures* as state unemployment insurance claim benefits." (emphasis added)); *Talberg v. Comm'r of Econ. Sec.*, 370 N.W.2d 686, 688 (Minn. App.1985) (citing section 2311(d) as authority for using state appellate court procedures for unemployment benefits claims).

449

Because section 2311(d) merely invokes procedural state law and does not invoke the protections of the substantive laws of the states, we are powerless to invoke more generous state law protections for locked out workers without Congressional authorization.

Although relator presents an argument that is, in equity, both reasonable and compelling, his plea must be made to Congress, not to the court. He did not have the 26 weeks of work in the 52–week period prior to his separation from employment on August 7, 2000, that are required for TRA benefits under the Trade Assistance Act of 2002, 19 U.S.C. § 2291. Without a statutory exception for locked-out workers, the lockout period cannot count toward the work-duration requirement. We affirm the determination that relator does not qualify for TRA benefits.

## DECISION

Because relator's weeks of lockout from employment do not count toward the 26 weeks of work earning at least $30 per week before the qualifying separation date required to receive TRA benefits, the senior unemployment review judge did not err by adopting, without further review, the unemployment law judge's decision denying relator benefits.

**Affirmed.**