Alaa I. ABDI, Relator,

v.

**DEPARTMENT OF EMPLOYMENT AND ECONOMIC DEVELOPMENT, Respondent.**

No. A07–0945.

Court of Appeals of Minnesota.

May 27, 2008.

Mark G. Stephenson, Stephenson & Sutcliffe, SW, Rochester, MN, for relator.

Lee B. Nelson, Katrina I. Gulstad, Minnesota Department of Employment and Economic Development, St. Paul, MN, for respondent.

Considered and decided by SCHELLHAS, Presiding Judge; KLAPHAKE, Judge; and HALBROOKS, Judge.

## OPINION

SCHELLHAS, Judge.

By writ of certiorari, relator challenges the decision of the unemployment-law judge (ULJ) that he was not eligible for extended TRA benefits because he was not enrolled in full-time remedial training. Because we hold that the United States Trade Act of 1974 and its regulations do not require participation in full-time remedial training in order to receive extended TRA benefits, we reverse.

## FACTS

Relator Alaa I. Abdi was born in Somalia, moved to Yemen in 1986, and moved to Minnesota in 2000. In Minnesota, he worked for IBM and then Celestica until it ceased doing business in 2002. Relator then applied for unemployment benefits with respondent Department of Employment and Economic Development (DEED). In January 2003, Celestica was certified under the Trade Act of 1974, making relator eligible for trade adjustment assistance (TAA).

In August 2003, relator filed an application for TAA and TRA. He was tested at Rochester Community and Technical College, and it was determined that remedial courses in English and math were necessary prerequisites for relator's occupational training. In his application for TAA and TRA, relator stated that he was taking general equivalency degree (GED) courses and needed remedial training in English and math. In September 2003, DEED approved relator's TAA training plan, and in October 2003, relator and DEED signed a Trade Act Training Contract. DEED

also approved relator's application for TRA benefits and paid him basic TRA benefits for the period of March 19, 2004, through June 18, 2005.

In 2005, relator spoke with his TAA counselor about extending his benefits beyond June 2005 because he needed more time to complete his coursework at the community college. Relator's TAA counselor helped relator submit an amendment to his plan to allow for a program of remedial education[ because relator had to take 26 credits of remedial courses in English and math in order to graduate. On May 5, 2005, the TAA coordinator approved a 25–week extension of relator's TRA benefits, apparently under the belief that relator had been in a "remedial program" for the first 25 weeks of his training. Relator's TAA counselor's notes reflect that in May 2005 he "[c]alled TRA to check on [e]xtension for Remedial training." He further noted that "[relator] will be deemed as having received [r]emedial TRA for first two semesters and will be eligible for TRA through 12/05."

DEED paid relator remedial TRA benefits from June 25, 2005, through December 10, 2005, the end of his period of benefits extension. None of relator's training at the community college consisted of full-time remedial training in English or math. In November 2006, DEED issued a TRA overpayment determination, finding that the remedial TRA was incorrectly authorized for the period of June 25, 2005, through December 10, 2005, and concluding that relator had been overpaid in the amount of $7,400. The TRA overpayment determination includes the following finding of fact:

> You collected Remedial TRA benefits when you were not eligible to receive these benefits. For a period of time you were scheduled for full-time TAA approved training[. At] this time remedial and occupational training were scheduled concurrently. The combination of the remedial and occupational training brought you to full-time status, but the remedial itself was not full-time.

> Remedial TRA was incorrectly authorized at $296 per week for 25 weeks from week ending 6/25/05–12/10/05 for a total of $7,400.00.

Relator appealed DEED's determination of overpayment. The ULJ affirmed the determination of overpayment and upon reconsideration the ULJ's decision was affirmed.

## ISSUE

■ Did the ULJ err in deciding that relator was not eligible for extended TRA benefits because he was not enrolled in a full-time remedial program?

## ANALYSIS

■ The Trade Act of 1974 (Act) provides that "[a] determination by a cooperating State agency with respect to entitlement to program benefits under an agreement is subject to review in the same manner and to the same extent as determinations under the applicable State law and only in that manner and to that extent." 19 U.S.C. § 2311(d) (2000). Under state law, we may affirm the ULJ's decision, remand it for further proceedings, or reverse or modify it if the relator's substantial rights "may have been prejudiced because the findings, inferences, conclusion or decision are ... affected by ... error of law" or "unsupported by substantial evidence in view of the entire record as submitted." Minn.Stat. § 268.105, subd. 7(d) (2006). We review findings of fact in the light most favorable to the ULJ's decision and defer to the ULJ's determinations of credibility. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn.App.2006). We exercise our in-

dependent judgment in reviewing questions of law de novo. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn.2002).

■ The critical issue is the interpretation of the Act and the federal regulations governing TRA benefits under the Act. 19 U.S.C. §§ 2101–2487 (2000 & Supp.2005); 20 C.F.R. §§ 617.10–.64 (2007); *see also* 20 C.F.R. §§ 617.01–.02 (2007) (providing that regulations in 20 C.F.R. § 617 (2007) apply to the TRA provisions of the Act). Statutory interpretation is a question of law, which we review de novo. *Houston v. Int'l Data Transfer Corp.*, 645 N.W.2d 144, 149 (Minn.2002). DEED argues that it is entitled to deference in its interpretation of these federal statutes and regulations. But when "the meaning of the words in [a] regulation is clear and unambiguous, [the court] need not defer to the agency's interpretation and may substitute its own judgment for that of the agency." *In re Cities of Annandale & Maple Lake NPDES/SDS Permit Issuance for the Discharge of Treated Wastewater*, 731 N.W.2d 502, 516 (Minn.2007); *see also St. Otto's Home v. Minn. Dep't of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn.1989) ("When a decision turns on the meaning of words in a statute or regulation, a legal question is presented," and therefore "reviewing courts are not bound by the decision of the agency and need not defer to agency expertise"). Thus, if we conclude that the Act and regulations are clear and unambiguous with respect to the issue before us, DEED's interpretation is entitled to no deference.

■ Words and phrases in a statute are to be construed according to their plain and ordinary meaning. *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). "Where the legislature's intent is clearly discernable from plain and unambiguous language, statutory construc-

tion is neither necessary nor permitted and we apply the statute's plain meaning." *Hans Hagen Homes, Inc. v. City of Minnetrista*, 728 N.W.2d 536, 539 (Minn.2007); *see also* Minn.Stat. § 645.16 (2006) (providing that when the language of a statute is "clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit"). A statute is ambiguous only if its language is subject to more than one reasonable interpretation. *Schroedl*, 616 N.W.2d at 277.

To determine if the language in the Act and the regulations regarding extensions of TRA benefits for remedial training is clear and unambiguous, we must begin with the language itself. *See Annandale*, 731 N.W.2d at 517 (stating that to determine whether a statute or regulation is ambiguous, we start with the text itself). DEED states in its TRA overpayment determination that: "To qualify for TRA for any week of unemployment that begins on or after November 21, 1988, an individual must meet each of the . . . requirements of [20 C.F.R. § 617.11(a)(2)(i)-(vii)]." The requirements set forth in section 617.11(a)(2)(vii) include training, as follows:

(A) The individual must—

(1) Be enrolled in or participating in a training program approved pursuant to § 617.22(a), or

(2) Have completed a training program approved under § 617.22(a), after a total or partial separation from adversely affected employment within the certification period of a certification issued under the Act, or

(3) Have received from the State agency a written statement under § 617.19 waiving the participation in training requirement for the individual.

. . . .

(D) For purposes of paragraph (a)(2)(vii) of this section, the following definitions shall apply:

(1) Enrolled in Training. A worker shall be considered to be enrolled in training when the worker's application for training is approved by the State agency and the training institution has furnished written notice to the State agency that the worker has been accepted in the approved training program which is to begin within 30 calendar days of the date of such approval. (A waiver under § 617.19 shall not be required for an individual who is enrolled in training as defined herein.)

20 C.F.R. § 617.11(a)(2)(vii). TRA are limited by 19 U.S.C. § 2293(a)(2)(A) and (B) to a 104–week period, except when a worker needs remedial education. The statute provides for an additional 26–week period to assist a worker to complete training approved for the worker under section 2296 "which *includes a program of remedial education*" under 19 U.S.C. § 2296(a)(5)(D). 19 U.S.C. § 2293(g) (emphasis added). Section 2296(a)(5)(D) includes "any program of remedial education." *Id.* § 2296(a)(5)(D). The meaning of "any program of remedial education" is in dispute.

The regulations promulgated pursuant to the Act state that "a training program may consist of a single course or group of courses which is designed and approved by the State agency for an individual to meet a specific occupational goal." 20 C.F.R. § 617.22(f)(3)(i). With regard to full-time training, the regulations provide that "[i]ndividuals in TAA approved training shall attend training full time, and when other training is combined with [on-the-job training] attendance at both shall be not less than full-time." *Id.* § 617.22(f)(4).

Considering the Act and regulations as a whole, their meaning on the disputed point is clear and unambiguous. Eligible workers must participate in *full-time* training and in training programs that are approved by DEED. The Act does not provide that eligible workers must participate full time in only one type of approved training at a time; in fact, it states that the full-time training requirement may be satisfied by a combination of on-the-job training and other training. 20 C.F.R. § 617.22(f)(4). Under the Act, on-the-job training and remedial education are distinct types of training programs, 19 U.S.C. § 2296(a)(5)(A)(i), (a)(5)(D), and the regulations contemplate that they may be combined to constitute full-time training. Nothing in the Act prohibits a program of remedial education from being combined with another type of training to constitute full-time training. *See* 19 U.S.C. § 2293(g) (authorizing extended TRA for training "which includes a program of remedial education"); 20 C.F.R. § 617.22(f)(3)(i) (stating "a training program may consist of a single course"). In this case, relator requested an extension to complete a training program approved by DEED, which included a remedial education program and in which relator participated full time. A plain reading of the Act and regulations supports relator's claim that his extended TRA benefits were properly authorized.

DEED asserts that the phrase "program of remedial education" combined with the requirement that workers in approved training must attend training full time means that TRA benefits can only be extended to cover full-time remedial training. Relator concedes that he never participated in full-time remedial training and DEED therefore argues that relator was not eligible to receive an extension of his TRA benefits. But in its interpretation of the Act and regulations, DEED confuses the terms "training" and "training program." Although the applicable regulation

requires full-time participation in training, 20 C.F.R. § 617.22(f)(4), it does not limit this requirement to full-time training in one single program. 20 C.F.R. § 617.22(f)(3)(i). The Act allows the full-time training requirement to be satisfied by participation in more than one training program, so long as that participation is full-time. *See* 19 U.S.C. § 2296(a)(5)(A)(i), (a)(5)(D) (including on-the-job training and "any program of remedial education" as allowable training programs); 20 C.F.R. § 617.22(f)(4) (indicating that full-time participation in training can be achieved by participating in a combination of an on-the-job training program and other training).

▆▆▆▆ Moreover, our determination that the Act and regulations are clear and unambiguous considers the meanings of their terms according to their overall purpose. A "determination of whether words or phrases are ambiguous does not depend on a reading of those words or phrases in isolation, but relies on the meaning assigned to the words or phrases in accordance with the apparent purpose of the regulation as a whole." *Annandale*, 731 N.W.2d at 517. The purpose of the Act and regulations is to assist workers who have been adversely affected by import competition to return to suitable employment. *Nelson v. Comm'r of Employment & Econ. Dev.*, 698 N.W.2d 443, 447 (Minn. App.2005). The Act's purpose is remedial and therefore its eligibility provisions should be liberally construed. *Id.* The purpose of the Act and regulations do not support DEED's narrow construction of the phrase "program of remedial education" to mean only full-time remedial training.

DEED argues that construing the Act to permit an extension of TRA benefits to cover a combination of remedial and occupational training would allow individuals to obtain extensions of TRA benefits to take intermittent remedial courses. For example, DEED argues that an individual in a high-level technical program could receive an extension of TRA benefits for a single refresher course in mathematics. But the Act permits the extension of TRA benefits for training that includes a remedial training program, 19 U.S.C § 2293(g), which the regulations define as potentially "a single course." 20 C.F.R. § 617.22(f)(3)(i). The Act also requires that the worker participate in an *approved* program of remedial education. To the extent that DEED approves the worker's single course as a training program, the Act allows for TRA benefits to be extended to cover the single course, provided that the worker is engaged in full-time training during the extension period. DEED's hypothetical is unpersuasive.

**DECISION**

The unemployment-law judge erred in deciding that relator was ineligible for extended TRA benefits because the Act clearly and unambiguously does not require a worker to participate in full-time remedial training in order to receive extended TRA benefits.

**Reversed.**