CONTINENTAL HYDRAULICS
INCORPORATION,
Relator,

v.

DEPARTMENT OF EMPLOYMENT
AND ECONOMIC DEVELOPMENT,
Respondent.

No. A12–1654.

Court of Appeals of Minnesota.

June 10, 2013.

Gary Van Cleve, Michael Mergens, Timothy A. Rye, Larkin Hoffman Daly & Lindgren, Ltd., Bloomington, MN, for relator.

Lee B. Nelson, Amy R. Lawler, Minnesota Department of Employment and Economic Development, St. Paul, MN, for respondent Department of Employment and Economic Development.

Considered and decided by BJORKMAN, Presiding Judge; CONNOLLY, Judge; and STAUBER, Judge.

## OPINION

BJORKMAN, Judge.

Relator challenges the unemployment-law judge's (ULJ) calculation of its unemployment-insurance (UI) tax rate, arguing that the ULJ erred by transferring a portion of the predecessor employer's experience-rating history to relator after determining there is substantially common management or control between the employers. We reverse and remand to DEED for recalculation of relator's UI tax rate.

## FACTS

Continental Machines Inc. (CMI) is a Minnesota corporation. In 2011, CMI agreed to sell its hydraulics division to Duplomatic Oleodinamica, an Italian company. Duplomatic formed relator Continental Hydraulics Inc. to complete the acquisition. Duplomatic is Continental Hydraulics' sole shareholder; CMI has no ownership interest in or control over Continental Hydraulics or Duplomatic. CMI continues to operate its machine-tool division.

Mike Wilkie and his sister own 100% of CMI, and Wilkie has final authority for all significant investment and strategic decisions. Mike Johnson is CMI's president. Prior to the 2011 sale, Gary Heist was CMI's vice president and treasurer. Dale Horihan was the general manager of CMI's hydraulics division. Sheryl Marshal directed CMI's materials group, and Vonn Bonemma was a salesperson in CMI's hydraulics division.

In connection with the sale, CMI terminated 81 of its 165 employees, including management-level employees, who were then offered employment at Continental Hydraulics. Roberto Maddalon is Duplomatic's CEO and Continental Hydraulics' chairman and president. Four former CMI employees hold management positions at Continental Hydraulics: Horihan is the CEO and has total local responsibility of the company, Heist is the CFO, Marshal is the director of operations, and Bonemma is the sales manager.

On July 5, 2011, Continental Hydraulics registered as a business entity with respondent Minnesota Department of Employment and Economic Development (DEED). On August 5, DEED notified Continental Hydraulics that it had 30 days to provide additional information about its acquisition of CMI's hydraulics division. Heist received the notification, attempted to provide the requested information online, and contacted DEED by telephone. DEED did not receive the information.

On November 10, DEED informed Continental Hydraulics that it was reporting wages of former CMI employees, that DEED planned to transfer a portion of CMI's experience-rating history to the company, and that Continental Hydraulics had 30 days to provide information about its acquisition of CMI's hydraulics division. Continental Hydraulics claims that it did not receive the November 10 notification. On December 19, Continental Hydraulics submitted the requested information to DEED.[1] The next day, DEED issued a determination of succession, finding that Continental Hydraulics and CMI share common ownership, management, or control; transferring 49.09% of CMI's experience-rating history to Continental Hydraulics; and issuing Continental Hydraulics an $18,201 penalty for not timely reporting the acquisition. As a result of the deter-

---

1. In this submission, Continental Hydraulics marked a box indicating that it had 25% or more common ownership or substantially common management or control with CMI. Heist, its CFO, claims that he did not mark the box and does not know who did.

mination, DEED calculated Continental Hydraulics' UI tax rate at 8.34%.[2]

Continental Hydraulics appealed DEED's decision, and the ULJ conducted an evidentiary hearing. The ULJ determined that there is substantially common management or control between the employers and that Continental Hydraulics is subject to a penalty for not timely reporting the acquisition. Continental Hydraulics requested reconsideration. The ULJ affirmed his decision, concluding that while "the very top levels of management" are different, "key persons who made high level decisions for [CMI] are now in key positions with [Continental Hydraulics] making high level decision[s]. These people were and remain high ranking managers of the local workforce." This certiorari appeal follows.[3]

## ISSUE

Did the ULJ err by transferring a portion of CMI's experience-rating history to Continental Hydraulics after determining that there is substantially common management or control between the employers?

## ANALYSIS

We review a ULJ's order to determine whether it is "(1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the department; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious." Minn.Stat. § 268.105, subd. 7(d) (2012). We review findings of fact in the light most favorable to the decision and will

not disturb them if they are substantially supported by the evidence. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn.App.2006). But statutory interpretation is a question of law, which we review de novo. *Abdi v. Dep't of Emp't & Econ. Dev.*, 749 N.W.2d 812, 815 (Minn. App.2008).

**A. To transfer a portion of a predecessor employer's experience-rating history to a successor employer, Minn.Stat. § 268.051, subd. 4(b), requires substantially common management or control between the predecessor and successor employers at the time of the acquisition.**

An employer's UI tax rate is calculated "by adding the base tax rate to the employer's experience rating along with assigning any appropriate additional assessment." Minn.Stat. § 268.051, subd. 2(a) (2012). An employer's experience rating is calculated annually and is generally based on the number of its employees who became eligible for unemployment benefits within the preceding 48 months. *See* Minn.Stat. § 268.051, subd. 3(a) (2012); *Easy St. W. v. Comm'r Econ. Sec.*, 345 N.W.2d 250, 253 (Minn.App.1984). When an employer acquires a portion, but not all, of the business or workforce of another employer, a portion of the predecessor employer's experience-rating history is transferred to the successor employer if

there is 25 percent or more common ownership or *there is substantially common management or control between the predecessor and successor,* the successor employer acquires, as of the date of acquisition, the experience rating his-

---

2. Continental Hydraulics estimates that its UI tax rate would be approximately three percent without CMI's experience-rating history.

3. The parties resolved the penalty dispute during the pendency of this appeal, so we do not address the issue.

tory attributable to the portion it acquired, and the predecessor employer retains the experience rating history attributable to the portion that it has retained.

Minn.Stat. § 268.051, subd. 4(b) (2012) (emphasis added).

Resolution of the issue here turns on the meaning of the phrase "there is substantially common management or control between the predecessor and successor." Continental Hydraulics argues that this language requires concurrent common management or control between the employers at the time of the acquisition. DEED contends that the statute applies when the management or control of the successor is substantially similar to the management or control of the predecessor at any time, including prior to the acquisition.

In interpreting a statute, our goal "is to ascertain and give effect to the intention of the legislature." *Greene v. Comm'r of Minn. Dep't of Human Servs.*, 755 N.W.2d 713, 721 (Minn.2008). If statutory language is clear on its face, we engage in no further statutory construction and apply its plain meaning. *Carlson v. Dep't of Emp't & Econ. Dev.*, 747 N.W.2d 367, 371 (Minn.App.2008). In determining a statute's plain meaning, we read the statute as a whole and interpret its language in light of the surrounding provisions to avoid conflicting interpretations. *Eclipse Architectural Grp., Inc. v. Lam*, 814 N.W.2d 692, 701 (Minn.2012). When a statute is ambiguous, we may consider, among other factors, the necessity for the law, the circumstances under which it was enacted, the legislative history, and administrative interpretations of the statute. Minn.Stat.

§ 645.16(1)-(2), (7)-(8) (2012). A statute is ambiguous when the language is "susceptible to more than one reasonable interpretation." *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 759 (Minn.2010).

We begin our analysis by considering the statute's plain language. The legislature prefaced the phrase in question with the words "there is." Use of the present tense suggests a temporal requirement—that the common management or control must be concurrent. In other words, the employers must be managed or controlled by the same persons at the same time. The word "common" also indicates that the predecessor and successor employers must have substantially the same management or control at the same time. *See The American Heritage Dictionary* 372 (4th ed.2006) (defining "common" as "[b]elonging equally to or shared equally by two or more; joint").

■ Our analysis is further guided by consideration of the surrounding legislation. *See Eclipse Architectural Grp., Inc.*, 814 N.W.2d at 701. The "substantially common management or control" language was added to the statute in 2005. *See* 2005 Minn. Laws ch. 112, art. 1, § 7, at 677. An uncoded session law[4] passed with the amendment specifically provides that the language was added "to meet the requirements of the Federal SUTA Dumping Prevention Act of 2004." 2005 Minn. Laws ch. 112, art. 1, § 15, at 682. The session law further states that the amendment "shall be construed, interpreted, and applied consistent with the requirements of [the SUTA Dumping Prevention Act of 2004]." *Id.*

---

4. Although this uncoded session law is not contained in Minnesota Statutes, it is binding Minnesota law. *See Granville v. Minneapolis Pub. Sch., Special Sch. Dist. No. 1*, 732

N.W.2d 201, 208 (Minn.2007) ("The actual laws of Minnesota as passed by the legislature ... are contained in the session laws." (quotation omitted)).

The SUTA Dumping Prevention Act[5] requires every state to enact a law that provides

> if an employer transfers its business to another employer, and both employers are (at the time of the transfer) under substantially common ownership, management, or control, then the unemployment experience attributable to the transferred business shall also be transferred to ... the employer to whom such business is so transferred.

SUTA Dumping Prevention Act of 2004, Pub.L. No. 108–295, §§ 1–2, 118 Stat. 1090, 1090 (2004) (codified at 42 U.S.C. § 503(k)(1)(A) (2006)). The act is designed to prevent employers from transferring their business or workforce to shell companies that they own, manage, or control in order to manipulate their experience rating and lower their UI tax rate. 150 Cong. Rec. S8,804 (daily ed. July 22, 2004) (statement of Sen. Nickles).[6] To effectuate this purpose, the act expressly applies when both employers are under common management or control at the time of the acquisition.

■ Based on (1) the statute's plain language; (2) the requirement that the 2005 amendment be construed, interpreted, and applied consistent with the SUTA Dumping Prevention Act; and (3) the SUTA Dumping Prevention Act's requirement that both employers be under common management or control at the time of the transfer, we conclude that Minn.Stat. § 268.051, subd. 4(b), requires substantially common management or control between a predecessor and successor employer at the time of the acquisition in order to transfer a portion of a predeces-

sor employer's experience-rating history to a successor employer.

DEED argues that the statute goes beyond the federal act's mandate and transfers a predecessor employer's experience-rating history in situations where the federal act does not. We disagree. Although Minnesota may adopt laws that are more stringent than the federal act's requirements, nothing suggests that the legislature chose to do so here; the uncoded session law explicitly instructs us to construe, interpret, and apply the statutory amendment that added the language at issue consistent with the SUTA Dumping Prevention Act. The federal act only applies when both employers are under common management and control at the time of the acquisition. Accordingly, we reject DEED's argument.

**B. Substantial evidence does not support the ULJ's transfer of a portion of CMI's experience-rating history to Continental Hydraulics.**

■ Because Minn.Stat. § 268.051, subd. 4(b), effectuates an experience-rating-history transfer when the predecessor and successor employers have common management or control at the time of the acquisition, substantial evidence does not support the ULJ's decision. DEED concedes that CMI and Continental Hydraulics were never, at any time, concurrently managed or controlled by the same persons. To the contrary, CMI discharged its employees before Continental Hydraulics hired them. Accordingly, we reverse the ULJ's decision and remand to DEED for recalculation of Continental Hydraulics' UI tax rate.

---

5. SUTA means State Unemployment Tax Act. *Colo. Div. of Emp't & Training v. Accord Human Res.,* 270 P.3d 985, 990 n. 4 (Colo.2012).

6. The parties agree that this case does not implicate the concerns that the SUTA Dumping Prevention Act is intended to address.

## DECISION

Because there must be substantially common management or control between a predecessor and successor employer at the time of the acquisition under Minn.Stat. § 268.051, subd. 4(b), the ULJ erred by transferring a portion of CMI's experience-rating history to Continental Hydraulics.

**Reversed and remanded.**