IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 9, 2024 Session

## JAMESWAY CONSTRUCTION, INC. v. DAVID W. SALYERS, P.E.

**Appeal from the Chancery Court for Davidson County**
**No. 23-0419-II      Anne C. Martin, Chancellor**

———————————————————

**No. M2023-01704-COA-R3-CV**

———————————————————

JEFFREY USMAN, J., dissenting.

The parties in the present appeal duel over the question of whether, when appealing the decision of an administrative judge to the Board of Water Quality, Oil, and Gas in relation to an alleged violation of the Water Quality Control Act, a party has 15 or 30 days in which to appeal. Jamesway Construction, Inc. asserts that the Tennessee Department of Environment and Conservation (TDEC) only had 15 days to appeal, and, accordingly, that the administrative judge's decision became final when TDEC failed to appeal within that period. TDEC insists that it had 30 days to appeal, and, accordingly, that its appeal was timely.

Tennessee Code Annotated section 69-3-110(a), a provision of the Water Quality Control Act, expressly provides that "the administrative judge's initial order, together with any earlier orders issued by the administrative judge, shall become final unless appealed to the board[1] by the commissioner[2] or other party within thirty (30) days of entry of the initial order."[3] The majority, nevertheless, concludes that the commissioner or other party does not actually have 30 days to appeal and instead must appeal within 15 days to prevent the

———

[1] As defined in the Water Quality Control Act, the Board "means the board of water quality, oil and gas, created in § 69-3-104." Tenn. Code Ann. § 69-3-103(4).

[2] As defined in the Water Quality Control Act, the Commissioner "means the commissioner of environment and conservation or the commissioner's duly authorized representative and, in the event of the commissioner's absence or a vacancy in the office of commissioner, the deputy commissioner." Tenn. Code Ann. § 69-3-103(6).

[3] Under the Water Quality Control Act, "[a]ny hearing brought before the board pursuant to § 69-3-105(i), § 69-3-109, § 69-3-115, § 69-3-116, or § 69-3-118 shall be conducted as a contested case. The hearing shall be heard before an administrative judge sitting alone pursuant to §§ 4-5-301(a)(2) and 4-5-314(b), unless settled by the parties." Tenn. Code Ann. § 69-3-110(a).

administrative judge's decision from becoming final. While the majority offers a thoughtful opinion in support of this understanding, I respectfully disagree with the conclusion reached by my colleagues.

Before we begin to put together the parts to see what the General Assembly has legislatively designed regarding appeals to the Water Quality, Oil, and Gas Board from decisions of administrative judges in relation to alleged violations of the Water Quality Control Act, it is critical to make certain that we know, and have together, all the parts that make up the final legislative product designed by the legislature. Much of my divide with my colleagues in the present case involves a disagreement over whether a particular part should be included as a component in putting together that final product.

The majority discounts a portion of the Tennessee General Assembly's 2013 amendment of the Water Quality Control Act. Via a 2013 amendment to the Water Quality Control Act, the General Assembly adopted the following provision:

> For the purpose of construing this act in relation to the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, this act shall be deemed to be procedural in nature. It is the intent of the general assembly that this act and the Uniform Administrative Procedures Act shall be complied with, however when in conflict, the provisions of this act shall govern.

2013 Tenn. Pub. Acts, ch. 181 § 19. The majority disregards this provision because the amendment has not been codified into the Tennessee Code Annotated despite being approved through the legislative process in the General Assembly and signed into law by the Governor. The majority regards the 2013 amendment as more akin to legislative history that speaks to the legislative intent rather than actual law.

I disagree with this understanding of the uncodified portion of the 2013 amendment. Tennessee Code Annotated section 1-1-108(a) authorizes the Tennessee Code Commission to

> rearrange, regroup and renumber the titles, chapters, sections and parts of sections of the statutes, codes and code supplements and to change reference numbers to agree with any renumbered chapter or section; to change the wording of and prepare new section headings and symbols; to substitute the proper section or chapter reference where the terms "this act" or "the preceding section" or similar expressions are used in the statutes; to correct manifest misspelling and typographical errors and to change capitalization and spelling for the purpose of uniformity; to change references to governmental agencies, departments and officers when part or all of the powers, rights and/or duties of such agencies, departments or officers have,

- 2 -

by an act of the general assembly, been transferred to other agencies, departments or officers; to omit enacting clauses, repealing clauses, severability clauses, conditional clauses, preambles, captions and statements declaring legislative intent; and to make other stylistic, nonsubstantive changes if such changes are consistent with style guidelines that have been approved by the commission and submitted to the judiciary committee of the senate and the civil justice committee of the house of representatives.

However, Tennessee law also provides that when "preparing the manuscript of the revised compilation (including pocket supplements and replacement volumes) for publication and distribution, the commission shall not alter the sense, meaning or effect of any act of the general assembly, but shall copy the exact language of the text of the statutes, codes and session laws of a public and general nature of the state of Tennessee." *Id.* A contrary approach allowing for "alteration of the sense, meaning or effect of any act of the general assembly" by the Tennessee Code Commission would raise serious constitutional concerns. *See generally* Tenn. Const. art. II (setting forth multiple clauses that address the lawmaking process in the Tennessee General Assembly); Tenn. Const. art. III, § 18 (describing the procedure for presentment and signing or vetoing legislation by the Governor).

Despite the prohibition on altering the sense, meaning, or effect of the text of the statute as passed and even when exercising caution,[4] it is possible for the Code Commission to err. Tennessee courts have indicated that when such an error occurs it is the public act that was passed into law by the General Assembly rather than the modified version that appears in the code that is the law. *See*, *e.g.*, *State v. Frazier*, No. M2016-02134-CCA-R9-CD, 2017 WL 4251118, at *5 (Tenn. Crim. App. Sept. 25, 2017) (noting the existence of a "codification error" and "that '[w]hen there is a conflict in the codification process, the Public Act as originally passed controls'"); *State v. Ford*, No. M2007-00431-CCA-R3-CD, 2008 WL 1968824, at *4 (Tenn. Crim. App. May 7, 2008) ("Presumably, the Code's shortened and incomplete definition of 'magistrate' results from a codification error. When there is a conflict in the codification process, the Public Act as originally passed controls."); *State v. Hicks*, 835 S.W.2d 32, 37 (Tenn. Crim. App. 1992) (stating that "the Public Act is controlling and, when there is a conflict during the process of codification, the Act as originally passed control"); *see also Shelby Cnty. v. King*, 620 S.W.2d 493, 498 (Tenn. 1981) (Brock, J., concurring) ("This change, however, is apparently the result of an inadvertence of the Code Commission, since no public act in 1978 authorized such a change in the wording of T.C.A., s 67-3012. . . . [T]he apparent change in T.C.A., s 67-3012, purporting to extend the exemption to use taxes as well as the sales tax is wholly

---

[4] The Tennessee Supreme Court has indicated that in fulfilling its duties "the Code Commission should exercise great care in altering the text of a statute" because it is not authorized to "alter the sense, meaning or effect of any act of the general assembly." *Garrison v. Bickford*, 377 S.W.3d 659, 665 n.7 (Tenn. 2012) (citations omitted).

ineffectual."); *cf. Westbrook Ins. Co. v. Crosby*, No. 2:22-cv-2406-MSN-atc, 2023 WL 3767085, at *19 (W.D. Tenn. Jun. 1, 2023) ("If the Code Commission was responsible for the change, then that change could not have altered the meaning of 56-7-105 because the Code Commission lacks authority to make substantive changes to the meaning of the Tennessee Code.").[5]  Accordingly, I disagree with the majority's understanding of the uncodified portion of the 2013 amendment as no more than an indication of an unrealized legislative intent rather than a part of Tennessee law.  In other words, the 2013 amendment to the Water Quality Control Act is one of the parts, one of the component pieces, that make up the final legislative design for the process for appeals from administrative judges before the Board of Water Quality, Oil, and Gas under the Water Quality Control Act.

In considering how the different parts fit together, as a starting point, Tennessee Code Annotated section 69-3-110(a) of the Water Quality Control Act expressly provides for an appeal to the Board of Water Quality, Oil, and Gas being timely when filed to the within 30 days.  This is a specific provision and would seem to govern, establishing 30 days as the permissible period for appeals to the Board of Water Quality, Oil, and Gas.  However, as properly noted by the majority, the Uniform Administrative Procedures Act (UAPA) provides that "[a] petition for appeal from an initial order shall be filed with the agency, or with any person designated for such purpose by rule of the agency, within fifteen (15) days after entry of the initial order."  Tenn. Code Ann. § 4-5-315(b).  Initially, this would not seem to pose a problem for the 30-day window under Tennessee Code Annotated section 69-3-110(a) as the language relating to the timing for appeals to the Board of Water Quality, Oil, and Gas under the Water Quality Control Act is plainly more specific than the Uniform Administrative Procedures Act.  But, there is, again as is properly noted by the majority, an added complication.  The UAPA also provides that "[i[n any other case of conflict between this chapter and any statute, whether general or specific, this chapter shall control . . . ."  Tenn. Code Ann. § 4-5-103(b).  Additionally, as currently codified, the Water Quality Control Act also states in a section enacted prior to the 2013 amendment that "it is intended that all procedures in this part shall be in conformity with the Uniform Administrative Procedures Act, compiled in title 4, chapter 5."  Tenn. Code Ann. § 69-3-102(d).  Such a result would fit within the framework of the UAPA's objective which was a response to the "growth in the number of agencies" and the accompanying problem that had arisen in terms of "an 'incoherent, and indeed incomprehensible hodgepodge' of procedures and a 'very fragmented' judicial review process" through creation of a mechanism to "clarify and bring uniformity to the procedure of state administrative

---

[5] Tennessee courts are far from alone in this understanding which aligns both with the federal approach and that of other states. *See, e.g.*, *Stephan v. United States*, 319 U.S. 423, 426 (1943) (indicating that the United States "Code cannot prevail over the Statutes at Large when the two are inconsistent"); *Cont. Hydraulics Inc. v. Dept of Employment and Economic Dev.*, 832 N.W.2d 298, 301 n.4 (Minn. Ct. App. 2013) ("Although this uncoded session law is not contained in Minnesota Statutes, it is binding Minnesota law."); *State v. McFee*, 136 Or. App. 160, 901 P.2d 870, 873 (1995) (noting that "when the law as adopted by the legislature differs in substance from the law as codified, we must follow the legislature's version").

agencies and judicial review of their determination[s]." *Pickard v. Tenn. Dep't of Env't & Conservation*, No. M2011-01172-COA-R3-CV, 2012 WL 3329618, at *9 (Tenn. Ct. App. Aug. 14, 2012) (citations omitted).

This is the point where the majority's assembly of the various components of the legislature's statutory design ends. While posing a problem in terms of rendering the 30-day period of Tennessee Code Annotated section 69-3-110(a) a nullity, this configuration would make sense in putting together the conflicting statutory provisions. My concern, however, is that there is still a remaining unaccounted-for part—the 2013 amendment to the Water Quality Control Act. As noted above, section 19 of chapter 181 of the 2013 Tennessee Public Acts provides:

> [f]or the purpose of construing this act in relation to the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, this act shall be deemed to be procedural in nature. It is the intent of the general assembly that this act and the Uniform Administrative Procedures Act shall be complied with, however when in conflict, the provisions of this act shall govern.

This is the latest-in-time measure of the various parts adopted by the General Assembly in statutorily designing the appeals process before the Board of Water Quality, Oil, and Gas. In my view, for the reasons noted above, we cannot disregard this provision on the basis it was left uncodified by the Code Commission. Section 19 of chapter 181 of the 2013 Tennessee Public Acts remains law.

When we consider the 2013 amendment to the Water Quality Control Act as part of the legislative design, it renders the deadline 30 days, not 15 days, for appeals filed to the Board of Water Quality, Oil, and Gas for actions under the Water Quality Control Act. As noted by the majority, the Tennessee Supreme Court has directed that in the event of conflicting statutory provisions the more specific statutory provision takes precedence over the more general provision. *Falls v. Goins*, 673 S.W.3d 173, 180 (Tenn. 2023) (quoting *Lovlace v. Copley*, 418 S.W.3d 1, 20 (Tenn. 2013)). No provision at issue in the present case approaches the level of specificity of Tennessee Code Annotated section 69-3-110(a) which directly specifies the number of days (30) in which an appeal may be filed in precisely this type of matter. The complication, though, remains that the UAPA claims to govern in the event of both specific and general conflicts between its terms and other statutory provisions. Nevertheless, under the 2013 amendment to the Water Quality Control Act, this Act now specifically rejects applying the UAPA in event of a conflict with the terms of the Water Quality Control Act. Thus, while the UAPA claims to apply in the event of "any conflict" more generally, the Water Quality Control Act specifically states that its terms apply rather than the UAPA. This is supportive of TDEC's understanding but not the firmest ground upon which to fully rest the analysis in the present case. Ultimately, providing for additional security in the footing in this case is adherence

to the Tennessee Supreme Court's construction principal that "when 'two acts conflict and cannot be reconciled, the prior act will be repealed or amended by implication to the extent of the inconsistency between the two.'" *See Falls*, 673 S.W.3d at 180 (quoting *Hayes v. Gibson Cnty.*, 288 S.W.3d 334, 337 (Tenn. 2009)). As asserted by Justice Antonin Scalia and Professor Bryan Garner, there is "no doubt about it" that an implied repeal occurs when a later statute "specifically permits what an earlier statute prohibited or prohibits what it permitted." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 327 (2012). This understanding is consistent with previous decisions of the Tennessee Supreme Court. For example, in *Hayes v. Gibson County*, a 2001 public act was held to be irreconcilable with a 2000 private act where the public act established a minimum salary of $50,805 for the juvenile court clerk while the private act mandated a set salary of $32,000. *Hayes*, 288 S.W.3d at 338. The Tennessee Supreme Court reasoned that because the public act mandated that the clerk absolutely could not be paid at the level established by the private act, "the statutes are in irreconcilable conflict." *Id.* at 339; *see also, e.g., Chartis Cas. Co. v. State*, 475 S.W.3d 240, 246 (Tenn. 2015) ("The plain language of section 578, stating that the assessments 'shall no longer be imposed on insurers,' further supports our conclusion that the three workers' compensation statutes have been repealed insofar as they are inconsistent with section 578."). The 2013 Amendment which states that the terms of the Water Quality Control Act apply when in conflict with the UAPA, is later in time than the conflicting UAPA provision which purports that it controls over conflicting statutory provisions and the conflicting Water Quality Control Act provision that would favor the UAPA in any statutory conflict. Given the conflicting nature of these provisions, each purporting to determine which statute controls in the event of a conflict, the provision later in time, the 2013 amendment to the Water Quality Control Act, applies. Accordingly, we return to where we began the highly specific provision of Tennessee Code Annotated section 69-3-110(a), which directly specifies the number of days (30) in which an appeal may be filed in precisely this type of matter, with the UAPA not successfully rendering this provision a nullity. Therefore, I would conclude that TDEC's appeal was timely filed, and, thus, I respectfully dissent from the majority's thoughtful opinion in this case.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE